THE COUNTY OF DE KALB, Plaintiff-Appellant, v. STEVE VIDMAR *et al.*, Defendants-Appellees.

Second District   No. 2—92—0371

Opinion filed October 13, 1993.

Michael P. Coghlan, State's Attorney, of Sycamore (Mary K. Manning, Assistant State's Attorney, of counsel), for appellant.

Bradley J. Waller, of Boyle, Cordes & Brown, of Sycamore, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, the County of De Kalb (County), charged defendants, Steve and Barbara Vidmar, with violating three De Kalb County ordinances. The County charged that defendants (1) brought two mobile homes onto their property without permits (De Kalb County Code §4.09); (2) built a structure over and around the mobile homes without a permit (BOCA National Building Code §111.1 (1984) as adopted by De Kalb County Code §5.1); and (3) continued construction of the structure in violation of a stop work order (BOCA National Building Code §118.1 (1984) as adopted by De Kalb County Code §5.1). The County also filed a fourth charge against defendants which it later dropped. After a bench trial, the trial court found that defendants did not violate any of the ordinances as charged. The County appeals. We affirm.

The bench trial revealed the following facts. Steve Vidmar owned approximately 33.6 acres in De Kalb County. Two and one-half acres of this property were zoned residential, and Steve was building a house on that portion of the property. The remainder of the property was zoned agricultural. Steve leased the agricultural portion of his property to Friendly Farms, Ltd. Steve and his mother, Barbara Vidmar, were officers of Friendly Farms, Ltd. They worked full-time for that endeavor raising various types of animals for use in petting zoos, pony rides, hay rides, and other activities. They also raised alfalfa to use as animal feed.

In October 1990, defendants applied to the De Kalb County Planning Department for a permit to bring two mobile homes onto the property. The planning department neither granted nor denied this permit. Defendants placed two mobile homes on the property and began to construct additions to the mobile homes. On December 10, 1990, Merle Carter, De Kalb County building inspector, and Christopher Aiston, De Kalb County planning director, observed construction of a roof and walls around the mobile homes. Because defendants had not obtained a building permit for the construction, Carter and Aiston posted a "stop work" order at the site.

The following week, defendants and their attorney invited Carter and Aiston back to the site. Carter and Aiston observed that the "stop work" order had been removed and defendants had proceeded with the construction. Defendants eventually completed the structure around the mobile homes. The structure connected the two mobile homes with a roof and walls. Defendants obtained a sanitation permit for the mobile homes from the county health department. Defendants and three farm employees took up residence in the structure.

On January 29, 1992, the trial court entered judgment for defendants based on its finding that defendants had not violated any County ordinances. The trial court gave no reasoning for its decision. When the County moved for a statement of the trial court's findings of fact, the trial court issued an order which stated that "the record and order of January 29, 1992, shall speak for themselves." The County brought this timely appeal.

We first note that the County has supplied this court with copies of the relevant ordinances. The copies that the County provides, however, do not show the date of the edition of the De Kalb County Code from which the copies come. However, there is no dispute that the portions of the De Kalb County Code supplied by the County were in effect during the relevant time periods.

The County has adopted portions of the BOCA National Building Code (BOCA) regarding building permits. (De Kalb County Code §5.1.) Section 111.1 of BOCA requires a permit when a property owner seeks:

"[T]o construct, enlarge, alter or demolish a structure; or change the occupancy of a building or structure requiring greater strength, exit or sanitary provisions; or to change to another use; or to install or alter any equipment for which provision is made or the installation of which is regulated by this code ***." (BOCA National Building Code §111.1 (1984) as adopted by De Kalb County Code §5.1(a).)

"Upon notice from the code official that work on any building or structure is being prosecuted contrary to the provisions of this code or in an unsafe and dangerous manner, such work shall be immediately stopped." BOCA National Building Code §118.1 (1984) as adopted by De Kalb County Code §5.1(a).

In support of their contention that they were authorized to bring the mobile homes onto their property and build a structure around the mobile homes without obtaining a permit, defendants contend that the De Kalb County Code exempts from BOCA regulation "farm buildings and structures as defined by chapter 34 of the Illinois Revised Statutes." (De Kalb County Code §5.12(2).) Defendants further assert that section 5—12001 of the Counties Code exempts them from obtaining a permit for the mobile homes. Ill. Rev. Stat. 1991, ch. 34, par. 5—12001.

Section 5—1063 of the Illinois Counties Code provides in relevant part:

"For the purpose of promoting and safeguarding the public health, safety, comfort and welfare, a county board may prescribe by resolution or ordinance reasonable rules and regulations (a) governing the construction and alteration of all buildings, structures and camps or parks accommodating persons in house trailers, house cars, cabins or tents and parts and appurtenances thereof and governing the maintenance thereof in a condition reasonably safe from hazards of fire, explosion, collapse, electrocution, flooding, asphyxiation, contagion and the spread of infectious disease, where such buildings, structures and camps or parks are located outside the limits of cities, villages and incorporated towns, but *excluding those for agricultural purposes on farms including farm residences* ***." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 34, par. 5—1063.

Section 5—12001 of the Counties Code is a zoning statute which grants the county board authority to regulate and restrict the location, and use, of buildings, structures, and land for trade, industry, residence, and other use. (Ill. Rev. Stat. 1991, ch. 34, par. 5—12001.) It further provides that the powers granted by the statute may not be exercised "to impose regulations or require permits with respect to land used for agricultural purposes." Ill. Rev. Stat. 1991, ch. 38, par. 5—12001.

Defendants claim that they lived in the structure at issue because of its proximity to their livestock so that they could care properly for the livestock. They claim, therefore, that the structure was a farm residence used for "agricultural purposes" exempt from obtaining a permit under section 5—12001 of the Counties Code and from BOCA regulation under the express provisions of the De Kalb County Code. The County does not dispute that the land on which the structure sat was zoned for agricultural use or that defendants were engaged in an agricultural pursuit. The County argues, however, that a structure used as a residence is not used for an agricultural purpose, even if it is on agricultural land and used by a person engaged in agriculture.

■ In determining whether an activity involving use of the land has an agricultural purpose, courts look at the nature of the activity itself rather than to the property owner's ultimate business objectives. (*County of Kendall v. Aurora National Bank Trust No. 1107* (1988), 170 Ill. App. 3d 212, 216; *Tuftee v. County of Kane* (1979), 76 Ill. App. 3d 128, 132.) The agricultural use exemption from county regulation should not "be manipulated and twisted into a protection for virtually any use of the land as long as some agricultural activity [is] maintained on the property." (*County of Kendall*, 170 Ill. App. 3d at 219.) The exemption should be construed so as not to "frustrate the obvious intent of the legislature to allow agriculture, and only agriculture, to be pursued without zoning restrictions." *County of Kendall*, 170 Ill. App. 3d at 219.

In *People v. Husler* (1975), 34 Ill. App. 3d 977, 979 (*Husler I*), the court held that a mobile home which defendant used as a residence was not exempt from regulation by the county even though it was on agriculturally zoned property. Being on agricultural property did not transform the residence into an agricultural building. (*Husler I*, 34 Ill. App. 3d at 979.) That case, however, did not address whether defendant himself resided in the mobile home in order to facilitate an agricultural purpose. (See 1976 Att'y Gen. Op. 211, 212.) In *County of Kendall v. Husler* (1977), 44 Ill. App. 3d

1013 (*Husler II*), the same defendant was prosecuted again for occupying an unauthorized mobile home on his property. In the meantime, the county had amended its own mobile home ordinance to provide an exception from regulation where the occupant of the mobile home was substantially engaged in the business of agriculture. (*Husler II*, 44 Ill. App. 3d at 1015.) The court held that because defendant was substantially engaged in agriculture, he did not violate any ordinances by failing to obtain a permit for his mobile home. *Husler II*, 44 Ill. App. 3d at 1015-16.

█ We have found no cases directly addressing the definition of a "farm residence" or whether a structure that is used as a dwelling by persons who are engaged full-time in agricultural pursuits is "used for agricultural purposes" under section 5—1063 or section 5—12001. We do not agree with the County that residing on a farm is not a "farm residence" or that living in a structure to promote a full-time business of farming is not an "agricultural purpose." The record reveals that defendants inherited the mobile homes and worked full-time on the land raising animals for use in petting zoos, pony and hay rides, and other similar activities. We determine that the mobile homes constituted a "farm residence" for "agricultural purposes." Therefore, the express terms of the De Kalb County Code exempt defendants from BOCA regulation.

Defendants further argue that, even if the mobile homes were not agricultural within the meaning of section 5—1063 or section 5—12001 of the Counties Code, the De Kalb County Code did not require defendants to obtain a permit for the mobile homes. Section 4.09 of the De Kalb County Code regulates mobile homes as follows:

> "No mobile home shall be used as a dwelling unit on any lot, plat or tract of land other than the one approved as a mobile home park by the county planning commission, the board of appeals, and the county board of supervisors licensed by the Illinois State Board of Health, *except that full time, temporary, or permanent employees on agricultural pursuits, may be housed in mobile homes on the premises*, if adequate sanitary facilities are provided and a distance of six hundred (600) feet is maintained from residential subdivisions." (Emphasis added.) (De Kalb County Code §4.09(c).)

Under this provision, it seems that defendants would not have violated any ordinance by placing the mobile homes on their property and using them to house agricultural employees. Whether the mobile homes, themselves, could give rise to a violation of the De Kalb County Code depends on whether defendants, who lived inside the

mobile homes, could be considered "employees on agricultural pursuits." The De Kalb County Code does not define the term "employee." The County has not addressed the specific issue of whether Steve and Barbara Vidmar were employees under section 4.09(c) of the De Kalb County Code, and the trial court never made a specific finding on that issue.

We determine, as a matter of law, defendants were employees under section 4.09(c). Defendants claimed in their affidavit filed May 24, 1991, as well as at trial, that they worked full-time to promote the endeavors of Friendly Farms, Ltd. At trial, Steve Vidmar claimed that his duties included supervising between 6 and 30 employees in caring for the animals. He also claimed that he cared for animals himself. He received compensation from Friendly Farms, Ltd., in the form of room and board. He stated that Barbara Vidmar's duties included answering the phone, managing the checkbook, and overseeing "stuff." Barbara was president of Friendly Farms, Ltd., and Steve was secretary and treasurer.

Plaintiff, however, indicates that defendants' affidavit of April 5, 1991, described their positions of authority on the farm as employers. They did not mention their status as employees of Friendly Farms, Ltd., in this affidavit. However, the record illustrates that defendants operated and managed Friendly Farms. The fact that they employed others who also lived on the premises does not limit their status as employees. For these reasons, defendants were "employees on agricultural pursuits" as defined by section 4.09(c) of the De Kalb County Code.

For the foregoing reasons, we affirm the judgment of the circuit court of De Kalb County.

Affirmed.

BOWMAN and COLWELL, JJ., concur.