NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

JOSEPH V.,[1] *Plaintiff/Appellant*,

*v.*

GREGORY MCKAY; ARIZONA DEPARTMENT OF CHILD SAFETY,
*Defendants/Appellees.*

No. 1 CA-CV 17-0052
FILED 9-4-2018

Appeal from the Superior Court in Maricopa County
No. LC2015-00382-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

COUNSEL

Rubin & Ansel, PLLC, Scottsdale
By Yvette D. Ansel
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Defendants/Appellees*

---

[1]     On the court's own motion, it is ordered amending the caption in this appeal as reflected in this decision. The above-referenced caption shall be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined. Judge Perkins also delivered a separate special concurrence.

---

**P E R K I N S**, Judge:

**¶1**　　　　The Department of Child Safety ("DCS") determined that there was probable cause that Joseph V. ("Father") committed an act of abuse on his son and ordered that Father be placed on DCS's central registry. Father disputes DCS's substantiation of abuse and asks this Court to order DCS to remove Father's entry from the central registry. For the following reasons, we affirm the superior court's ruling, which upheld DCS's order substantiating abuse.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**　　　　On April 15, 2013, Father drove his nine-year-old son A.V. and his girlfriend's six-year-old son L. home from a wrestling match. Father was upset with A.V.'s performance at the wrestling match. After getting out of the car, Father pulled A.V. out of the vehicle, and A.V. fell onto the landscaping rocks immediately outside of the truck, scraping his hand and elbow.

**¶3**　　　　Four days later, L.'s father made a report to the children's school, saying that L. told him that A.V. had done poorly at a wrestling event, and that Father was angry and picked him up by the neck and threw him on the ground. The school notified Gilbert Police about the incident, and a Gilbert police officer interviewed A.V. at school without notifying Father. The police officer reported that A.V. told him he did not do well at wrestling practice and Father yelled at him and called him names like "idiot" and "stupid," and when they got home, Father "lifted him up and out of the truck and threw him onto the ground because he was still mad at him . . . Father used both of his hands to encircle his neck and lifted him upward and out from the truck. . . . [T]his involved his Father squeezing his neck during the process." The police officer took photos of A.V.'s wounds and described them as a "very minor injury."

¶4          On May 2, a DCS case manager interviewed A.V. and reported that he said that "they came home from wrestling and his dad was mad and grabbed him by the neck and pulled him out of the truck and threw him on the rocks." The case manager also interviewed L. and reported that he said that "they were driving home from [A.V.'s] wrestling and [Father] was calling him an idiot. When they got home, he saw [Father] pull [A.V.] out of the truck by his neck and threw him into the rocks."

¶5          In an interview with DCS on May 6, Father denied grabbing A.V. by the neck or throwing him down but admitted that he was upset with A.V. not being coachable in wrestling. When asked about A.V.'s wounds, Father suggested they were from wrestling, but when confronted with A.V.'s and L.'s accounts, he stated that he grabbed A.V. by the arm to get him out of the truck and A.V. fell onto the rock near the truck. The record shows DCS, after interviewing L's father, appears to have conducted no further investigation in the case.

¶6          Nearly a year later, the investigator completed her assessment; then, ten months after that, in December 2014, she recommended closing the case. On appeal, DCS gives no reason for this delay. Nearly two years after the incident, on February 5, 2015, DCS reviewed the investigator's assessment and found the allegations of abuse to be substantiated. DCS then notified Father that it intended to list the incident in DCS's central registry. Father timely requested a hearing before an Administrative Law Judge ("ALJ"). The issue at the hearing was whether there was probable cause to support DCS's proposal that the following language be entered into the central registry: "On or about 4/15/13, [Father] abused [A.V.], age 10, when he forcibly grabbed him by the neck and threw him to the ground, causing abrasion injuries that scabbed on [A.V.]'s left hand and elbow."

¶7          The hearing before the ALJ took place on July 6, 2015, and Father was the only witness to testify. The ALJ found that Father was credible when he testified that he pulled A.V.'s arm to help him get out of the vehicle, and that A.V. slipped on the landscaping rock, partly as a result of wearing wrestling shoes, which are not designed for walking on gravel. The ALJ also reviewed reports of investigators' interviews with A.V. and L., but discounted the children's accounts. The ALJ also concluded that L.'s father had "substantial animus" toward Father and had both frequent and recent contact with L., who was close to A.V. Finally, the ALJ noted that the lack of bruises on A.V.'s neck and very minor injuries on his arm were more consistent with an accidental fall than the "extremely violent act" of which Father was accused. The ALJ found that there was no probable cause

for the proposed finding and concluded that the report should not be substantiated or entered into DCS's central registry.

¶8　　　　The Director of DCS rejected the ALJ's decision and ordered the report to be substantiated and entered into DCS's central registry. Father appealed to the superior court, which upheld the Director's decision. Father now appeals to us.

## DISCUSSION

¶9　　　　Both the superior court and this Court are required to affirm an administrative agency's action unless "the agency's action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." Ariz. Rev. Stat. ("A.R.S.") § 12-910(E); *McGovern v. Ariz. Health Care Cost Containment Sys. Admin.*, 241 Ariz. 115, 118, ¶ 8 (App. 2016). Our review of the agency's action is independent from the superior court's review. *Saldate v. Montgomery*, 228 Ariz. 495, 498, ¶ 10 (App. 2012).

## I.　　Finding of Abuse

¶10　　　　"In reviewing factual determinations, our respective roles begin and end with determining whether there was substantial evidence to support the administrative decision." *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Products, Inc.*, 167 Ariz. 383, 387 (App. 1990). Whether substantial evidence exists is a question of law we decide de novo. *Id.* However, in performing our review, we view the evidence in a light most favorable to sustaining the Director's decision. *Lovitch v. Indus. Comm'n of Ariz.*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶11　　　　Upon receiving a report of child abuse or neglect, DCS can "substantiate" the report and enter a finding of abuse or neglect in its central registry. A.R.S. §§ 8-804, -811. DCS will substantiate a finding of abuse if there is "some credible evidence" that the abuse occurred. Ariz. Admin. Code R21-1-501(13), (17). The finding of abuse or neglect remains on the registry for twenty-five years, where it can be used to evaluate a person's qualifications for certification, licensure, or employment with the State of Arizona or its contracting agencies for positions involving the direct provision of services to children. A.R.S. § 8-804(B), (E).

¶12　　　　After completing an investigation into an allegation of child abuse, DCS has 14 days to notify the relevant parties that it intends to substantiate a finding of abuse or neglect, and at that point the accused can request a hearing before an ALJ. A.R.S. § 8-811(B), (C). After the hearing, if

4

the ALJ determines that the report is not supported by probable cause, it issues an order to DCS to amend the finding of abuse or neglect. A.R.S. § 8-811(K). The administrative process then follows Arizona's Uniform Administrative Hearing Procedures ("UAHP"): the Director of DCS has thirty days to review and accept, reject, or modify the ALJ's decision and order; the Director's resulting decision becomes the final administrative decision. A.R.S. §§ 8-811(M)(4), 41-1092.08(B), (F).

¶13        Here, we must evaluate whether the record contains substantial evidence to support a probable cause finding that, "On or about 4/15/13, [Father] abused [A.V.], age 10, when he forcibly grabbed him by the neck and threw him to the ground, causing abrasion injuries that bled on [A.V.]'s left hand and elbow." *See* A.R.S. § 8-811(E), (K), (M)(2) (requiring probable cause to substantiate a finding of abuse).

¶14        The evidence in support of DCS's finding consists of photographs of A.V.'s wounds and the reports of accounts of the two children who purportedly witnessed the incident. The nine-year-old and six-year-old both told DCS agents and the police that Father grabbed A.V. by the neck, pulled him out of the truck, and threw him onto the ground. The photographs and consistent testimony of the two children is some credible evidence, which is all that is required to establish probable cause for the Director's findings.

¶15        Father contends that substantial evidence conflicts with the children's testimony, for example: evidence of the animosity of L.'s father toward Father and the likelihood that L.'s father influenced the children's testimony, Father's own testimony of the incident that the ALJ found credible, the lack of bruising on A.V.'s neck, and evidence of A.V.'s propensity to lie. However, even if this conflicting evidence is substantial, it does not mean the evidence against Father cannot also be substantial. *See Shaffer v. Ariz. State Liquor Bd.*, 197 Ariz. 405, 409, ¶ 20 (App. 2000) ("[C]onflicting evidence can still be 'substantial.'"). We do not weigh evidence on appeal to determine which evidence is more persuasive, and if there is substantial evidence for DCS's findings, we will affirm, regardless of substantial evidence to the contrary. *Id.*

¶16        Father also contends that the Director failed to give deference to the ALJ's findings regarding demeanor and credibility. It is true that an ALJ's credibility findings are entitled to greater weight than other findings, and we "should be particularly inclined to scrutinize the [Director]'s disagreements with [the] ALJ's credibility findings." *Ritland v. Ariz. State Bd. Of Med. Examiners*, 213 Ariz. 187, 191–92, ¶¶ 13–15 (App. 2006).

However, the standard of our review remains the same, and we will not reverse the Director's decision if the record contains substantial evidence supporting the decision. *Id.* at 192, ¶ 15. As discussed above, there is substantial evidence for the Director's factual findings.

**¶17**       In addition, the Director adequately explained why he concluded it was appropriate to depart from the ALJ's findings. *See* A.R.S. § 41-1092.08(B). The ALJ's findings were partly based on Father's theory that the children's accounts were not reliable because L.'s father orchestrated the children's stories against Father. In rejecting that theory, the Director explained that it was not credible for six-year-old L. to be a conduit for an exaggerated story, and for A.V. to go along with it while knowing it could be detrimental to Father. This shows that the Director meaningfully considered the ALJ's findings before rejecting them.

**¶18**       We acknowledge Father's contention that there is evidence that tends to show that he did not abuse A.V. However, because substantiation requires such a low standard of proof—probable cause—and because we are not permitted to reweigh evidence on appeal, we will not disturb the Director's finding.

## II.    Due Process

**¶19**       Father also asserts that the Director violated his due process rights, raising multiple arguments to support this point.

**¶20**       First, Father argues that his due process rights were violated because the Director did not review the transcript of the hearing before the ALJ. Father cites *Stoffel*, which held that when an agency "reserves to itself the initial responsibility for making findings of fact and conclusions of law," it must independently review the evidence by listening to the tape of the hearing. *Stoffel v. Ariz. Dep't of Econ. Sec.*, 162 Ariz. 449, 451–52 (App. 1989). *Stoffel* is inapplicable to this case because the ALJ—not the Director—made the initial findings of fact. *Id.* Further, *Ritland*, discussed above, cites *Stoffel* for the principle that the agency "must independently review the administrative record prior to making its findings of fact." 213 Ariz. at 191, ¶ 14. However, *Ritland* does not hold that the agency must review the transcript of the ALJ hearing in deciding whether to accept or reject the ALJ's findings and conclusions. Indeed, no Arizona statute requires the Director to review the transcript of the hearing. Following the hearing, statute requires the ALJ to send a copy of the decision to the agency, but does not require the ALJ to transmit a record of the hearing unless the agency requests it. A.R.S. § 41-1092.08.

¶21            Father also argues that DCS's nearly two-year delay in seeking to substantiate the report violated his due process rights. In support of this argument, he points to the United States Supreme Court's language in *Cleveland Bd. of Educ. v. Loudermill*, an employment case, which notes that, "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." 470 U.S. 532, 547 (1985). The *Loudermill* Court rejected the argument that a nine-month delay constituted a due process violation because, among other things, the delay "stemmed in part from the thoroughness of the procedures." *Id.* DCS has not explained the delay here, which was more than double the nine months at issue in *Loudermill*. Nonetheless, *Loudermill* is distinguishable because it involved a post-termination hearing, and so the delay deprived the plaintiff of a property interest during the interim; in this case, the delay in a hearing did not come after a deprivation of a constitutionally protected interest.

¶22            This case is more analogous to the criminal context, where a delay in issuing an indictment arguably postpones an alleged deprivation of a constitutionally protected interest. Delay of an indictment does not violate due process unless the defendant proves "actual, non-speculative prejudice from the delay" and that the length of the delay, when weighed against the reasons for the delay, "offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). Father has not proven either of these prongs.  Father may have believed the case was closed and there was no need to prepare for a proposed substantiation. However, he offers no contention that the delay caused him any prejudice, and does not argue that he could have better refuted the allegations against him if DCS had pursued the matter promptly. *See generally Brown v. Ariz. Dep't of Real Estate*, 181 Ariz. 320, 324 (App. 1995) ("The delay clearly violated [the agency's] own rules and is hardly a model of efficient decision-making. However, for the violation to rise to a due process infringement [Appellant] must show that he was prejudiced by the delay, causing him to lose a legal right.").

¶23            Father's remaining arguments regarding institutional bias are merely speculative and are unsupported by any citation to the record, and for those reasons they fail. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) ("An appellate court's review is limited to the record before the trial court.").

## III. Intent

¶24 The DCS Director in his Decision and Order noted that a finding of abuse here "does not require that a person intend to injure the child for abuse to have occurred if the injury resulted from the person's act." The parties did not argue this point on appeal. This court requested supplemental briefing on what, if any, culpable mental state must exist to establish child abuse for purposes of the central registry.

¶25 In response, DCS confirmed its position that the statute's plain text does not require proof of any mental state to commit the act or to cause the injury before the agency may substantiate a finding of abuse and include an individual on the central registry. The department further explained that not only is it textually acceptable to substantiate findings of abuse in circumstances of accidental injury, the department must be able to include such accidents to track events such as "shaken baby" incidents or cases of corporal punishment, in which the actors typically do not intend to injure the child.

¶26 In his supplemental brief, Father noted that DCS's position that accidental injuries may constitute abuse is not consistent with most other jurisdictions. According to Father, Arizona is one of only two states that allows an administrative finding of child abuse where conduct results only in superficial, accidental injuries (Tennessee is the other state). Most states have either explicit statutory requirements for a culpable mental state, definitions of injury that require something more than superficial, minor scrapes, or both; a few jurisdictions have judicially required a standard of intent or non-accidental injury to support an administrative finding of child abuse.

¶27 As DCS contends, Arizona's definition of "abuse" does not explicitly require proof of any *mens rea*. A.R.S. § 8-201(2). In other words, accidental injuries resulting from an intentional act can be used to substantiate a finding of abuse.

¶28 Father argues, however, that Arizona's statute is improperly vague because it can be applied in situations involving otherwise lawful conduct and thus individuals are not sufficiently on notice as to what is prohibited. DCS's construction of the statute, for example, might result in a parent being placed on the registry for engaging in intentional physical contact with his child—whether as part of a formal sport, informal play, or otherwise—that happens to cause a minor physical injury.

¶29 This case does not present such a situation. The record included some credible evidence, which meets the statutory probable cause standard, supporting the finding that Father "forcibly grabbed [A.V.] by the neck and threw him to the ground." This court's duty is to apply the law as written. *Trust v. County of Yuma*, 205 Ariz. 272, 278, ¶ 29 (App. 2003) ("It is not in the court's power to change legislative enactments; our duty is to interpret the law and apply it as written."). Setting the breadth of DCS enforcement authority is a legislative responsibility.

## CONCLUSION

¶30 DCS needs only probable cause to substantiate a report of abuse. Because substantial evidence in this case supports probable cause of the proposed finding, we affirm the Director's order and the superior court's ruling affirming that order.

P E R K I N S, Judge, specially concurring:

¶31 While I agree with the panel's conclusions, I write separately to highlight a concern that I believe this case presents: the statutory language setting forth the relevant administrative process suggests a different process than occurred here.

¶32 Section 8-811 prescribes the hearing procedures available to an individual accused of abuse as Father was here. An individual who requests a hearing is entitled to one held by the state Office of Administrative Hearings pursuant to the Uniform Administrative Hearings law ("UAH"). A.R.S. § 8-811(J); *see also* A.R.S. §§ 41-1092 to -1092.12. The UAH explicitly exempts DCS from its provisions "except as provided in [DCS statutes] §§ 8-506.01 and 8-811." A.R.S. § 41-1092.02(A)(15).

¶33 The DCS statute relevant here specifies that, "[o]n completion of the presentation of evidence," if the ALJ "determines that probable cause does not exist to sustain the department's finding, [the ALJ] **shall order the department** to amend the information or finding in the report." A.R.S. § 8-811(K) (emphasis added); *see also* A.R.S. § 8-811(N) (defining "[a]mend the finding" and "[a]mend the information"). Conversely, the UAH states that the ALJ "shall issue a written decision within twenty days after the hearing is concluded." A.R.S. § 41-1092.08(A). The UAH then allows the Director another 30 days to accept, reject, or modify the decision. *See* A.R.S. § 41-1092.08(B). Thus, the statutes allow for the ALJ to order DCS to change its

report for up to 50 days before the Director issues a final administrative decision.

**¶34** Importantly, the UAH contemplates that orders and decisions are two different things, and neither the UAH nor the DCS statute allows for the Director to modify or reject an ALJ's order. *Compare* A.R.S. § 41-1092.07(F)(1) (failure to conform administrative hearing to judicial rules of procedure or evidence is not "grounds for reversing any administrative **decision or order** if the evidence supporting the **decision or order** is substantial, reliable and probative") (emphasis added) *with* A.R.S. § 41-1092.08(B) ("Within thirty days after the date the office sends a copy of the administrative law judge's **decision** to the . . . director . . . [the] director . . . may review the **decision** and accept, reject or modify it.") (emphasis added); *see also* § 8-811(K) ("the administrative law judge shall **order** the department to amend the information or finding") (emphasis added), -811(M) ("department shall provide the parent . . . a copy of the outcome of the investigation . . .[a]fter a final administrative **decision** has been made pursuant to § 41-1092.08") (emphasis added). Because of this, one could argue the Director was authorized only to reject the ALJ's decision and that by rejecting the ALJ's order "the agency's action is contrary to law," A.R.S. § 12-910(E), although Father has not argued so here. *See Phoenix City Prosecutor v. Lowery*, 244 Ariz. 308, 312 n.3, ¶ 10 (App. 2018) (argument not made in opening brief is waived).

**¶35** In summary, the DCS and UAH statutes may reasonably be construed together to require that: (1) upon request, individuals subject to a substantiated finding of abuse must receive a hearing before an ALJ who is independent of DCS; (2) such hearing must be procedurally conducted consistent with the UAH; and (3) although the specific DCS statute requires the ALJ to issue both an order and a decision, because DCS is generally exempted from the UAH, the Director of DCS is only allowed to reject the ALJ's decision. In other words, the Legislature did not textually authorize the DCS Director to approve, modify, or reject the independent ALJ's order.

**¶36** None of the parties raised or briefed this issue. Further, while the aforementioned construction undoubtedly offers greater due process protections, construing the DCS statute as requiring the ALJ to issue a decision and order, either of which the DCS Director is free to accept, reject, or modify, does not violate due process. *See Horne v. Polk*, 242 Ariz. 226, 234 ¶ 27 (2017) (due process is violated where the investigation, prosecution, and adjudication functions reside in the same individual; a single agency may serve all three functions). The differing language in the more specific DCS statute from the more general UAH statute, in my opinion, undercuts

such a construction. *Compare* A.R.S. § 8-811(K) *with* A.R.S. § 41-1092.08(B). But the divergent language does not wholly preclude the construction that the superior court relied on in this case. *See* A.R.S. § 12-910(E) ("the court shall decide . . . the interpretation of a constitutional or statutory provision or a rule adopted by an agency, without deference to any previous determination that may have been made on the question by the agency"); *Stambaugh v. Killian*, 242 Ariz. 508, 512, ¶ 25 (2017) (Bolick, J., concurring) (Arizona Supreme Court "has never expressly considered" whether Arizona courts would defer to agency interpretations as under *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).



AMY M. WOOD • Clerk of the Court
FILED:  AA