6 P.3d 752

**STATE of Arizona, Appellee,**

v.

**Verne L. WATSON, Appellant.**

**No. 1 CA–CR 99–0342.**

Court of Appeals of Arizona, Division 1, Department A.

July 3, 2000.

**50**

Elizabeth N. Olson, Assistant City Prosecutor, Phoenix, for Appellee.

Randall Callender, Phoenix, for Appellant.

## OPINION

SULT, Judge.

¶1 Defendant Verne L. Watson appeals the Maricopa County Superior Court's affirmance of his Phoenix Municipal Court conviction for a violation of the City of Phoenix's "Neighborhood Preservation Ordinance" arising out of the condition of defendant's premises. Defendant appeals pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 22–375 (1990), alleging the unconstitutionality of the ordinance. Because we find that the ordinance is constitutional on its face, we affirm.

## BACKGROUND

¶2 In October 1998, defendant was tried in Phoenix Municipal Court for a violation of chapter 39, article 2, section 39–7(A) (Supp. Apr. 30, 1998), of the Phoenix City Code. Section 39–7(A) prohibits visual blight and also prohibits the accumulation of garbage, debris, and the like on one's premises if the result is a health or safety hazard. Section 39–16(C) punishes a violation of section 39–7(A) as a class one misdemeanor.

¶3 The evidence showed that defendant's backyard was filled with dry vegetation, tires, scrap metal, an old barbecue grill, buckets, inoperable motor vehicles, auto body parts, wood stacked along the fence, barrels, and bicycle parts. Although defendant's backyard is fenced, the fence is less than six feet high and does not completely shield the yard and its contents from view. A city inspector testified that the accumulated material in defendant's yard constituted a fire and safety hazard.

¶4 The municipal court found defendant guilty and imposed a $2,500 fine with $2,300 to be suspended upon defendant's full compliance with the ordinance within four months. Defendant appealed the conviction to the superior court alleging that the ordinance was arbitrary and unreasonable and that it permitted authorities to take his property without just compensation. The superior court affirmed the judgment of the municipal court, and defendant appealed to this

court. Defendant argues here that the ordinance violates substantive due process under both the United States and Arizona Constitutions and is overbroad. In his reply brief, defendant resurrects the argument he made to the superior court that the ordinance effects a taking of his property without just compensation. We do not address this latter argument because defendant did not raise the issue in his opening brief. *See State Farm Mutual Automobile Insurance Co. v. Novak,* 167 Ariz. 363, 370, 807 P.2d 531, 538 (1990).

## ANALYSIS

■ ¶ 5 Our jurisdiction over a case that originates in municipal court, is appealed to superior court, and then appealed to this court is limited by A.R.S. section 22–375 to whether the ordinance is constitutionally valid on its face. *State v. Martin,* 174 Ariz. 118, 120–21, 847 P.2d 619, 621–22 (1992). If the ordinance is facially valid, our inquiry ends as we have no jurisdiction to review its specific application to a defendant. *State v. McLamb,* 188 Ariz. 1, 4, 932 P.2d 266, 269 (1996).

### Substantive Due Process

¶ 6 Defendant first challenges the ordinance on substantive due process grounds. Such a challenge asks a court to engage in a "substantive review" of the compatibility of the questioned law with the Constitution. John E. Nowak & Ronald D. Rotunda, *Constitutional Law* § 10.6, at 346 (5th ed.1995). In undertaking this task, an initial question for the court is the intensity of the review to which it should subject the legislation, a question that in turn depends on the nature of the individual right affected by the legislation.

■ ¶ 7 In the substantive due process context, independent review with no deference to legislative judgment, or "strict scrutiny," is employed for legislation that significantly impinges on fundamental individual rights, and such legislation will be upheld only if the state proves that it is justified by a compelling state interest. *See, e.g., Roe v. Wade,* 410 U.S. 113, 153–56, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (finding a fundamental right to abortion decision and applying strict scrutiny). If a fundamental individual right is not implicated, the legislation is subject to a more relaxed review, usually to determine whether there is a "rational basis" for the legislation. This type of review involves significant deference to the judgment of the legislative body regarding both the propriety of governmental involvement in the area covered by the legislation and the reasonableness of the means chosen to achieve the legislative goals. *See, e.g., Washington v. Glucksberg,* 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (declining to find a fundamental right to assisted suicide and applying rational basis review); *see also* Michael J. Phillips, *The Nonprivacy Applications of Substantive Due Process,* 21 Rutgers L.J. 537, 575–77 (1990) (discussing the various types of deferential, or "low-level," review methods employed by the Supreme Court in different substantive due process contexts). To successfully attack legislation subject to this type of review, the challenger must prove that the legislation lacks any conceivable rational basis. *Heller v. Doe,* 509 U.S. 312, 320–21, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993).[1]

¶ 8 What is a fundamental right? A fundamental right has been defined as one that is " 'deeply rooted in this Nation's history and tradition,' " or is so weighty as to be " 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if [it] were sacrificed.' " *Bowers v. Hardwick,* 478 U.S. 186, 191–92, 106 S.Ct. 2841, 92 L.Ed.2d

1. Review methodology under substantive due process is similar to that employed under the equal protection doctrine; that is, there are differing levels of scrutiny depending upon the nature of the right involved, and the justification required for the legislation is greater or lesser depending upon the intensity of the scrutiny applied. Nowak & Rotunda, *supra,* § 11.4, at 383, § 11.7, at 404. Whether a piece of legislation is reviewed under the equal protection doctrine or the substantive due process doctrine depends upon its mechanics. If the legislation affects all persons, substantive due process applies. *Id.* § 11.4, at 383. If the legislation creates a classification and affects only members of the class, review under equal protection is appropriate. *Id.*

140 (1986) (quoting *Moore v. City of East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)), and *Palko v. Connecticut,* 302 U.S. 319, 325, 326, 58 S.Ct. 149, 82 L.Ed. 288 (1937) (*overruled on other grounds by Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). Many of the fundamental rights accorded citizens are included in the Bill of Rights. Beyond this specific enumeration, the Supreme Court has identified in the Constitution a fundamental right to privacy, manifested in such forms as the right to marriage, the right to procreation, the right to child rearing and education, the right to contraception, and the right of a woman to choose whether to have an abortion. *Bowers,* 478 U.S. at 190, 106 S.Ct. 2841 (listing cases establishing these rights as fundamental). It should be noted that this "privacy" right is not some broad, unrestricted right to be left alone. Rather, it is a more particularized concept of privacy, focusing on concerns "of the most fundamental sort" to the individual, concerns that implicate "autonomy with respect to the most personal of life choices" and "the intimate aspects of identity." Laurence H. Tribe, *American Constitutional Law* § 15–1, at 1302 (2d ed.1988).

 ¶ 9 Turning now to the instant case, defendant invokes this fundamental right to privacy, identifying "the sanctity and privacy of the home" as the interest at stake.[2] Although we agree that one's right to privacy in the home is, in appropriate circumstances, a fundamental right worthy of the highest degree of protection, we disagree with defendant that this is the right implicated in this case. Viewed in its proper context, defendant's request actually seeks recognition and protection of a right to keep an accumulation of debris in his yard. In effect, this amounts to a right to be completely free from governmental regulation of the use and occupancy of one's real property, a right that not only is not fundamental but does not exist. *Cf. City of Phoenix v. Fehlner,* 90 Ariz. 13, 17, 363

P.2d 607, 610 (1961) (observing with regard to zoning laws enacted to alleviate urban blight that "[t]he concept that a man owns his property from the center of the earth to the limits of the sky to use as suits his own fancy is not now and has not ever been entirely true.").

¶ 10 We liken defendant's attempt to create a fundamental right to that made by the defendant in *Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121 (1983). The *Fuenning* defendant attacked Arizona's drunk-driving law, reasoning that he had fundamental rights to travel and to maintain a driver's license and that the DUI statute unconstitutionally impacted those rights. *Id.* at 595, 680 P.2d at 126. The Arizona Supreme Court concluded that the defendant was mischaracterizing the rights at issue. *Id.* at 597, 680 P.2d at 128. The court noted that regardless whether defendant had a fundamental right to drive, and even if he had a "right" to drink, he certainly did not have a fundamental right to combine the two, the activity specifically addressed by the statute. *Id.*

 ¶ 11 Here too defendant has mischaracterized the right for which he seeks fundamental status. Defendant's asserted right, a right to accumulate debris in his yard, is not "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty." In short, it is not a fundamental right, and the ordinance therefore is subject to rational basis review.

 ¶ 12 Rational basis analysis looks at the ends sought to be achieved by the questioned legislation and the means employed to achieve those ends. Legislation is valid if the subject matter is within the state's power to regulate and if the means employed are reasonable. *See Campbell v. Superior Court,* 106 Ariz. 542, 546, 479 P.2d 685, 689 (1971). To establish that legislation violates substantive due process, the plaintiff must prove either that the objectives of the

---

2. In addition to citing the Fourteenth Amendment to the United States Constitution, defendant relies on the right to privacy guaranteed by article 2, section 8 of the Arizona Constitution as a source of the right he asserts. However, other than to claim that the Arizona provision renders

"a man's home his castle," defendant offers no analysis of the applicability of that clause separate from his discussion of the United States Constitution's Due Process Clause. We therefore limit our analysis to the latter authority in addressing defendant's challenge.

legislation are not proper for governmental involvement, *see O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), or that the government's action as expressed in the legislation is clearly arbitrary and unreasonable, having no reasonable relation to promoting legitimate objectives, *see Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972).

¶ 13 We turn now to the subject ordinance. Section 39–7(A) provides,

·*General:* All land including exterior premises and vacant land, whether improved or unimproved, shall be maintained free from any accumulation of garbage, debris, rubble, hazardous waste, litter, rubbish, refuse, waste material, or blight, which includes, but is not limited to, graffiti on walls, fences, mail boxes, etc., bottles, papers, glass, cans, discarded broken, or inoperable appliances, discarded or broken furniture, broken glass, discarded broken or inoperable equipment, discarded or broken bicycles, an accumulation of vehicle, bicycle or appliance parts, piles of mixed materials, dry vegetation, rags, empty barrels, boxes, crates, packing cases, mattresses, bedding, excelsior, packing straw, packing hay or other packing material, lumber not neatly piled, lumber stored in front yards, scrap iron, tin and other metal not neatly piled or anything whatsoever in which insects, rodents, snakes or other harmful pests may live, breed or multiply or which may otherwise create a fire hazard. It is an affirmative defense to a violation of this subsection based on the presence of an inoperable vehicle that the vehicle was registered to a resident of the property, that the vehicle was undergoing repair, and that the total period during which the vehicle was inoperable did not exceed fifteen days. This affirmative defense may not be raised more than three times in any combination of civil or criminal proceedings in any one calendar year.

■ ¶ 14 We examine the ordinance initially to determine its goals. If those goals are evident from the language of the ordinance, we need look no further. *See Continental Casualty Co. v. Industrial Commission*, 113 Ariz. 116, 118, 547 P.2d 470, 472 (1976) (no statutory interpretation is needed if the intent of the statute is plain from its language). This ordinance plainly evinces its goals in its language. By focusing on accumulations of garbage, debris, etc., in which "insects, rodents, snakes or other harmful pests may live, breed or multiply or which may otherwise create a fire hazard," the ordinance seeks to promote health and safety. In addition, the ordinance is also directed at curbing "blight," which is defined in article 1, section 39–3 (Supp. July 31, 1998) as "[u]nsightly conditions," several illustrative examples of which are provided.

· ■ ¶ 15 If promoting health and safety and curbing visual pollution are legitimate governmental objectives, the ordinance passes its first hurdle toward a finding of constitutionality. *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981). In this regard, safeguarding the general health, safety, and welfare of the community has long been considered a proper goal for municipal government. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926). In addition, protecting aesthetic values by avoiding visual clutter is a constitutionally sanctioned objective for a municipality. *One World One Family Now v. City & County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir.1996) (quoting *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806–07, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Clearly under these authorities, the subject matter of this ordinance is a proper area for municipal regulation.

■ ¶ 16 Defendant does not seriously contest the legitimacy of the ordinance's goals, but asserts that the ordinance employs means that cause it to extend beyond its permitted reach. Defendant argues that the ordinance, in regulating what one may keep on one's premises, would prohibit such accumulations as a tidy collection of antique bottles or a yard full of pristine rose bushes. Such a prohibition is arbitrary and unreasonable, defendant reasons, because these accumulations pose no threat to health or safety and could not reasonably be regarded as blight.

¶ 17 Defendant's contention is premised on a misreading of the ordinance. The reach of this ordinance is far short of defendant's hypothetical bottle collection or rose garden. We first note that the use of the term "accumulation" inherently limits the scope of the ordinance because it implies that the ordinance is not aimed at an orderly assembly of items but is concerned with a cluttered and messy array of property. *See The Random House Dictionary of the English Language* 10 (unabr. ed.1967) (defining "accumulate" as "to heap up; gather, as into a mass"). A second limiting feature of the ordinance is that accumulations offend only if they are health or safety hazards or constitute visual pollution. Thus, in a prosecution under the ordinance, the city would have to prove that the subject accumulation had the characteristics necessary to create a health or fire hazard, or, if the prosecution were for blight, that under an objective standard a hypothetical reasonable person would regard the condition as unsightly.

¶ 18 We find that the language of the ordinance adequately restricts its scope so as to target only conditions that the city may legitimately regulate. Consequently, the ordinance's means of achieving its objectives are reasonable. Because we have also found that those objectives are proper for a municipality, we hold that the ordinance passes rational basis scrutiny and is facially constitutional. *See Campbell,* 106 Ariz. at 546, 479 P.2d at 689.

### Overbreadth

¶ 19 Defendant also argues that the ordinance is overbroad in that it criminalizes behavior that is lawful and cannot constitutionally be made unlawful. Defendant uses the same bottle collector and rose gardener he hypothesized for his due process argument. However, he does not identify any First Amendment interest implicated by this ordinance.

¶ 20 Ordinarily, one whose conduct is clearly within the prohibitory provisions of

an ordinance has no standing to argue that the ordinance also reaches lawful conduct of persons not before the court. *Seeley v. State,* 134 Ariz. 263, 267, 655 P.2d 803, 807 (1982). Such an argument is available, however, if the conduct in fact implicates an interest protected by the First Amendment. *See McLamb,* 188 Ariz. at 9, 932 P.2d at 274. Because no such interest is involved here, we find that defendant lacks standing for an overbreadth argument, and we therefore decline to consider it.[3]

### CONCLUSION

¶ 21 Section 39–7(A) does not violate substantive due process, and defendant lacks standing to raise an overbreadth argument. We therefore affirm defendant's conviction for violating this ordinance.

CONCURRING: REBECCA W. BERCH, Presiding Judge, and E.G. NOYES, Jr., Judge.

---

**3.** In truth, defendant's overbreadth argument is precisely the same as his due process argument. In his brief, defendant acknowledges this and offers nothing additional by way of analysis or authority. Even if we were to consider an overbreadth argument, we would reach the same result as that reached on the due process issue.