IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CINDY VONG and LA VIE, LLC, *Plaintiffs/Appellants,*

*v.*

DONNA AUNE, in her official capacity as Executive Director of the
Arizona State Board of Cosmetology, *Defendant/Appellee.*

No. 1 CA-CV 13-0423
FILED 05-27-2014

Appeal from the Superior Court in Maricopa County
No. CV 2009-037208
The Honorable George H. Foster, Jr., Judge

**AFFIRMED**

COUNSEL

Goldwater Institute, Scharf-Norton Center for Constitutional Litigation,
Phoenix
By Clint Bolick, Christina Sandefur
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By G. Michael Tryon, Bridget Fitzgibbons Harrington
*Counsel for Defendant/Appellee*

**OPINION**

Acting Presiding Judge Margaret H. Downie delivered the opinion of the
court, in which Judge Michael J. Brown and Judge Maurice Portley joined.

**D O W N I E**, Judge:

¶1   Cindy Vong and La Vie, LLC (collectively, "Vong") appeal from a judgment in favor of Donna Aune in her capacity as Executive Director of the Arizona State Board of Cosmetology ("Board"). We conclude the Board did not violate Vong's constitutional rights by applying existing infection control and sanitization standards to so-called "fish pedicures."[1] We therefore affirm the superior court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2   The Board regulates cosmetology, nail technology, and aesthetics in Arizona. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 32-501 to -576. The Board is statutorily required to perform certain duties, including: (1) adopting "necessary and proper" rules, including sanitary and safety standards for the practice of nail technology; and (2) administering and enforcing statutory requirements and rules. A.R.S. § 32-504(A)(1)-(2). Vong is an aesthetician and nail technician licensed by the Board. She owns and manages La Vie Nails & Spa.

¶3   During a routine inspection of Vong's salon in September 2008, Vong asked Board investigator Linda Stroh about offering fish pedicures. A few days later, Board personnel left a telephone message for Vong with a salon employee, advising that such treatments would violate Board rules. Vong began performing fish pedicures, claiming she never received the message.

¶4   The fish pedicures Vong offered started with a salon employee washing the customer's feet with antibacterial soap and inspecting for diseases or cuts, which would disqualify the patron from the treatment. The customer's feet were then placed in a tank containing water and garra rufa or chin chin fish that removed skin from the feet. At the end of the procedure, the patron's feet were again washed with antibacterial soap. Fish used in the pedicure were returned to a communal tank divided into two sections by a net separating fish used during the day from unused fish.

---

[1] Vong refers to the procedure as a "spa fish treatment," but, as we did in *Vong v. Aune* ("*Vong I*"), 1 CA-CV 10-0587, 2011 WL 1867409 (Ariz. App. Apr. 29, 2011) (mem. decision), we call it a "fish pedicure."

¶5 Stroh returned to Vong's salon in October 2008 and observed the fish pedicure set-up. Stroh and Aune also visited the salon in November 2008, examining the fish pedicure equipment and learning more about the treatments. In a letter sent to Vong sometime thereafter, the Board's executive director stated:

> [Fish pedicures are] a clear violation of the Board's Rule A.A.C. R 4-10-112 on Infection Control and Safety Standards. Any tool or piece of equipment used in a pedicure must be stored in a dry storage and disinfected in a very specific way and it is impossible to disinfect the fish coming in contact with your clients' skin in the required manner. . . . You are jeopardizing you[r] clients' health by performing this type of pedicure.

The letter directed Vong to immediately stop performing fish pedicures and sought a response within ten days. In her ensuing response, Vong questioned the Board's jurisdiction and challenged its reliance on rules "written at a time when the use of fish in the manner I have proposed, was not known or contemplated."

¶6 At a January 2009 meeting, the Board voted to offer Vong a consent agreement. Vong appeared at a March 2009 Board meeting and made a presentation in support of her fish pedicures. The Board, though, decided to proceed with the contemplated consent agreement.

¶7 In September 2009, Vong signed a consent agreement that required her to stop performing fish pedicures. The agreement recited the salon's history of offering the pedicures, which Vong agreed constituted grounds for disciplinary action "pursuant to A.R.S. § 32-572(A)(6) and § 32-574(A)(10) (violation of statute or rule) by violating A.R.S. § 32-501(6) and (9) (scope of practice) and A.R.S. § 32-541 and A.A.C. R4-10-112(A)(5)(B)(1)(2)(C)(1)(2)(E)(1)(7)(G)(1)(2)(P)(3)(4)(T)(2)(3) (infection control and safety standards)." The Board issued a "public reproof" to Vong and declared "that the performing of fish pedicures in the State of Arizona violate[s] the Board's statutes and rules."

¶8 Vong filed suit in superior court in November 2009. Count one of her complaint challenged the Board's jurisdiction to regulate fish pedicures, alleging the treatment did not constitute the practice of cosmetology, aesthetics, or nail technology. Count two alleged state constitutional violations, and count three asserted federal constitutional

claims. Vong sought declaratory and injunctive relief, as well as attorneys' fees and costs.

¶9 The superior court granted the Board's motion to dismiss Vong's complaint. On appeal from that judgment, this Court held that: (1) the consent agreement did not bar Vong's civil complaint; (2) the Board was authorized to regulate fish pedicures as a form of "nail technology" under A.R.S. § 32-501(10)(c); and (3) Vong's constitutional claims were improperly dismissed. *Vong v. Aune* ("*Vong I*"), 1 CA-CV 10-0587, 2011 WL 1867409 (Ariz. App. Apr. 29, 2011) (mem. decision).

¶10 On remand, the superior court conducted a bench trial to adjudicate Vong's constitutional claims. The court issued detailed findings of fact and conclusions of law, concluding that the Board had not violated Vong's constitutional rights. Vong timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶11 *Vong I* held that the fish pedicures Vong performed were a type of "nail technology," as that term is defined by statute. 2011 WL 1867409, at *6, ¶ 22. Vong concedes she is "generally subject to the Board's sanitary and safety requirements for salons." *Id.* at *5, ¶ 18; *see also* A.R.S. § 32-541(B) ("The safety and sanitary requirements specified by the board in its rules shall be requirements while a salon is operating."). She argues, though, that "applying rules regarding cosmetology implements to fish is flatly irrational." Her position is that fish are not tools, "so I don't think it is necessary to disinfect them."

¶12 In prohibiting fish pedicures, the Board relied in part on Arizona Administrative Code Rule ("Rule") 4-10-112, entitled, "Infection Control and Safety Standards." That rule includes the following provisions:

> **E.** Tools, instruments and supplies.
>
> 1. All tools, instruments, or supplies that come into direct contact with a client and cannot be disinfected (for example, cotton pads, sponges, porous emery boards, and neck strips) shall be disposed of in a waste receptacle immediately after use;
>
> . . . .

4

7. All supplies, equipment, tools, and instruments shall be kept clean, disinfected, free from defects, and in good repair . . . .

Additionally, subparagraph (O) prohibits use of a "devise [sic], tool, or chemical that is designed or used to pierce the dermis" if it is not sanitized in accordance with the rule. Rule 4-10-112(O)(1)(a), (2).

**¶13** *Vong I* held that using fish to remove skin is "a means of cleaning feet" subject to Board regulation. 2011 WL 1867409, at *6, ¶¶ 22-23. As such, the fish are not properly characterized as a form of "entertainment," as Vong asserts. The fish are the means by which this particular type of nail technology is performed. In that respect, the Board rationally classifies the fish as tools, instruments, or equipment, as those terms are used in Rule 4-10-112(E).[2]

**¶14** Vong does not challenge the facial validity of Rule 4-10-112(E). She argues instead that the rule is unconstitutional as applied to fish pedicures, though she concedes "the Board could have imposed reasonable regulations" on such treatments. Vong's constitutional claims are based on the privileges and immunities,[3] due process, and equal protection clauses.

**¶15** The parties agree that rational basis review applies to Vong's constitutional claims. Rational basis review is "the most relaxed and tolerant form of judicial scrutiny." *City of Dallas v. Stanglin*, 490 U.S. 19, 26 (1989). It has been aptly described as "a paradigm of judicial restraint." *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993).

---

[2] Merriam-Webster's Collegiate Dictionary defines "tool" as "something (as an instrument or apparatus) used in performing an operation or necessary in the practice of a vocation or profession." Merriam-Webster's Collegiate Dictionary 1239 (10th ed. 2001). "Instrument" is defined as "a means whereby something is achieved, performed, or furthered" or "one used by another as a means or aid." *Id.* at 605. "Equipment" is defined as "the set of . . . physical resources serving to equip a person or thing" or "the implements used in an . . . activity." *Id.* at 392.

[3] Vong concedes that her claims premised on the privileges and immunities clause are foreclosed by United States Supreme Court precedent. *See Slaughter-House Cases*, 83 U.S. 36 (1872). We therefore do not address those claims further.

"The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.*; *see also James v. Strange*, 407 U.S. 128, 133 (1972) ("Misguided laws may nonetheless be constitutional.").

¶16      We review constitutional claims and questions of law *de novo. Ramirez v. Health Partners of S. Ariz.*, 193 Ariz. 325, 327-28, ¶ 6, 972 P.2d 658, 660-61 (App. 1998). We give great deference, though, to the superior court's factual findings. *See United Calif. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 302, 681 P.2d 390, 454 (App. 1983). Where conflicting evidence or competing inferences exist, we will not substitute our opinion for the findings of the trial court. *Id.* "This rule is founded upon the theory that the trial court, having seen and heard the witnesses and the evidence, is in a better position to determine credibility and weight than the appellate court. For this reason, where there is conflict in the evidence, the lower court's findings will be accepted." *Id.* (citation omitted).

¶17      Under rational basis review, an enactment will be upheld if it is rationally related to furthering some legitimate governmental interest and the means employed are reasonably related to achieving the regulation's purpose. *Heller v. Doe*, 509 U.S. 312, 320 (1993); *State v. Watson*, 198 Ariz. 48, 51, ¶ 7, 6 P.3d 752, 755 (App. 2000). As the challenger, Vong has the burden of proving that the regulations, as applied, lack any conceivable rational basis. *See Heller*, 509 U.S. at 320; *Watson*, 198 Ariz. at 51, ¶ 7, 6 P.3d at 755. The Board has "no obligation to produce evidence to sustain the rationality of a statutory classification." *Heller*, 509 U.S. at 320. Furthermore, we accord "significant deference to the judgment of the legislative body regarding both the propriety of governmental involvement in the area covered by the legislation and the reasonableness of the means chosen to achieve the legislative goals." *Watson*, 198 Ariz. at 51, ¶ 7, 6 P.3d at 755.

¶18      Prohibitions on economic pursuits may lack a rational basis if they are unrelated to legitimate police powers. Courts have found a legitimate purpose lacking where a regulation fails to protect the public from harm, *see St. Joseph Abbey v. Castille*, 712 F.3d 215, 226-27 (5th Cir. 2013) (requiring all casket makers to be licensed did not protect public, as state law did not require a casket for burial); where the law merely protects those already licensed, *see Buehman v. Bechtel*, 57 Ariz. 363, 376, 114 P.2d 227, 232 (1941) (holding licensing requirement for photography

unconstitutional based on protectionism purpose and absence of harm to public from sale of photographs); or when subjecting a profession to regulation will not advance public health or safety, *see Cornwell v. Hamilton*, 80 F. Supp. 2d 1101, 1110, 1114, 1118-19 (S.D. Cal. 1999) (mandated curriculum for hair braiders "is not a rational exercise of licensure" because less than ten percent of cosmetology training applies to that craft.); *Edwards v. State Bd. of Barber Exam'rs*, 72 Ariz. 108, 231 P.2d 450, 453 (1951) ("[W]e are unable to find any relationship, either in logic or common sense, between the public health and safety and price-fixing in the barbering profession.").

**¶19**        The Board has expertise in matters relating to safety, sanitation, and infection control in the nail technology industry. Courts typically give deference to agencies charged with carrying out specific legislation. *Blake v. City of Phx.*, 157 Ariz. 93, 96, 754 P.2d 1368, 1371 (App. 1988). An agency's interpretation of a statute or regulation it implements is ordinarily entitled to great weight, *see Baca v. Ariz. Dep't of Econ. Sec.*, 191 Ariz. 43, 45-46, 951 P.2d 1235, 1237-38 (App. 1997), though its interpretations are not infallible, *U.S. Parking Sys. v. City of Phx.*, 160 Ariz. 210, 211, 772 P.2d 33, 34 (App. 1989).

**¶20**        In addition to the Board's base level of expertise, the record in this case reflects that the Board made a considered, deliberative decision about whether and how to regulate fish pedicures. Board personnel reviewed Vong's procedures, explanations, and video; personally observed her fish pedicure set-up and equipment; met with Vong on several occasions; considered letters from Vong's patrons; and conducted independent research, including attending a national conference discussing fish pedicures.[4] The Board also evaluated how other jurisdictions regulate fish pedicures and offered evidence at trial reflecting that numerous other states prohibit them based on health and safety concerns. It is also relevant to our analysis that the Board's actions have not prevented Vong from pursuing her chosen profession. Vong testified at trial that she operates a profitable salon without fish pedicures, and her Board license permits her to offer a wide array of other services.

---

[4] Nothing in our opinion should be read to suggest that an executive branch agency *must* undertake such actions to withstand rational basis review.

## I.    Due Process

**¶21**        We consider Vong's state and federal due process claims together because the respective due process clauses "contain nearly identical language and protect the same interests." *State v. Casey*, 205 Ariz. 359, 362, ¶ 11, 71 P.3d 351, 354 (2003), *superseded by statute on other grounds*, 2006 Ariz. Sess. Laws, ch. 199, § 2 (2d Reg. Sess.).  Deprivation of economic or professional pursuits has long been analyzed under a due process rubric, though the degree of judicial deference has expanded over time. *See generally Lochner v. New York*, 198 U.S. 45 (1905) (analyzing the "right to purchase or to sell labor" under the due process clause); *Allgeyer v. Louisiana*, 165 U.S. 578 (1897) ("liberty," as a part of due process, includes right to earn and pursue a livelihood) (subsequent histories omitted); *see also Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963) (discussing the expansion in judicial deference under due process analysis).  Due process challenges may be procedural or substantive. *See Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72 (2009).  Vong is not contesting the process she received, but rather the Board's application of regulations that have the effect of prohibiting fish pedicures.  We therefore review her claims on substantive due process grounds.

**¶22**        In general, a legislative enactment has a legitimate purpose when the government acts within its police powers by regulating to protect the public health, morals, and welfare. *Berman v. Parker*, 348 U.S. 26, 32 (1954) ("Public safety, public health, morality, peace and quiet, law and order — these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs.  Yet they merely illustrate the scope of the power and do not delimit it."); *Cohen v. State*, 121 Ariz. 6, 10, 588 P.2d 299, 303 (1978) ("[I]t is well established that the right to pursue a profession is subject to the paramount right of the state under its police powers to regulate business and professions in order to protect the public health, morals and welfare.").  Vong acknowledges that, on its face, Rule 4-10-112 advances "legitimate government purposes."  She maintains, though, that applying the rule to fish pedicures is "a regulatory mismatch, which results in the complete prohibition of a legitimate profession," in violation of her due process rights.  We disagree.

**¶23**        After considering the evidence presented at trial, the superior court found that the Board "has a legitimate interest in safeguarding the health and safety of consumers who are provided services in the professions it regulates" and that the sanitization regulations at issue "are intended to advance this legitimate interest in health and safety."  The record supports these findings.

¶24   Trial witnesses testified about the risk of disease posed by fish pedicures. The primary concern is disease transfer from fish to human or human to human. Witnesses testified that nail technology implements must be disinfected because "they come in contact with one client and then another" and create a risk of "cross-contamination" between patrons. Additionally, the Board deemed Vong's practices unsafe. As the superior court noted, "Board personnel who observed Vong's . . . operation and viewed her trash can holding tanks concluded that the fish pedicures offered by Vong were not safe or hygienic."

¶25   The fish Vong used for pedicures removed skin from feet. Vong's expert testified that the fish "actually are not feeding on skin. They're actually feeding on material behind the dead skin. And so they are nosing it or pushing it with their mouth parts." He described it as a "sucking, abrading action." Although the goal is to limit the fish to dead skin, evidence established that the fish may puncture live skin, causing bleeding. This concern is particularly acute with chin chin fish, which have teeth. But Vong's expert testified that "toothless" garra rufa fish can also cause bleeding. There was also evidence that communicable diseases capable of passing through blood and water in a cross-contamination situation may be serious and include HIV and hepatitis.

¶26   The trial evidence also established a risk of cross-contamination from fish tank water. Vong kept both used and unused fish in a communal tank, separating them with a net that did not prevent the exchange of water between the two sides. She filtered the water, but the tank itself was not drained and disinfected, tested for bacteria, or treated with chemicals. Some of the communal tank water would transfer to individual customer tanks. Evidence was presented that untreated water carries a risk of spreading disease — a risk that has led to an M. fortuitum outbreak from salon foot baths.[5] The superior court also noted a lack of evidence that the UV light Vong used "killed any and all bacteria or viruses that might be transmitted by the fish to the water."

¶27   Trial evidence additionally established risks associated with the fish themselves. Board personnel found dead fish floating in the

---

[5] A trial exhibit explains that "M. fortuitum" is a bacterium commonly found in water that can "cause a red rash that turns into boils and severe skin ulcers." The exhibit, a document issued by the Arizona Department of Health Services, states that M. fortuitum "can enter the skin through tiny cuts or scrapes, like those caused by shaving."

communal tank at Vong's salon, and Vong conceded she has no training in handling fish or in recognizing diseased fish. The Board's expert testified that fish "can carry both bacteria and viruses that are known pathogens to humans." In 2011, a disease outbreak among 6000 imported fish occurred in the United Kingdom, where the "fish hemorrhaged around the gills, the mouth, and the abdomen," leading to government intervention. After inspecting a shipment of fish, analysts found "a variety of human pathogens capable of causing invasive soft-tissue infections." In Canada, it was believed that fish to be used in pedicures were the source of E. coli bacteria.

¶28 In a section of its ruling entitled "Risks of Fish Pedicures," the superior court found, in pertinent part:

- Fish pedicures can cause skin breaks and bleeding.

- Water is a vector through which humans can contract a number of skin diseases and infections.

- Garra rufa fish imported into the United Kingdom have been found to carry a variety of bacteria, some of which are transmissible to humans.

- Plaintiff's expert, Dr. Graham Jukes, opines that fish pedicures do carry a risk of infection or disease that cannot be entirely eliminated through adherence to any set of safety protocols.

- Defendant's expert, Dr. Joseph Giancola, opines that fish pedicures carry a risk of infectious disease that cannot be completely eliminated through adherence to any set of safety protocols.

- Communicable diseases that might be contracted through fish pedicures include HIV and Hepatitis.

Each of these findings is supported by the evidence.

¶29 Under rational basis review, the Board need not prove the existence of substantial health risks; it is sufficient that the evidence establishes such risks rationally could exist. *See Heller*, 509 U.S. at 320; *Aleman v. Glickman*, 217 F.3d 1191, 1201 (9th Cir. 2000) (A law must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis" for it.); *Ariz. Downs v. Ariz. Horsemen's Found.*,

130 Ariz. 550, 556, 637 P.2d 1053, 1059 (1981) (Evidence is sufficient under rational basis review if "any set of facts" could "rationally justify" the enactment.). The evidence presented at trial met that standard. Although the cited risks occur rarely, when the risks become reality, the deleterious effects can be quite serious. It is also significant that Arizona is one of many states that prohibit fish pedicures based on health and safety concerns. *Cf. Cornwell*, 80 F. Supp. 2d at 1113 (considering other states' requirements in ascertaining "the rationality of [California's] required curriculum").

¶30 The superior court found, as a factual matter, that the Board's sanitation rules, including Rule 4-10-112, "are designed to protect clients from indirect or direct exposure to bacteria or infection." It further found that the Board "considered how to apply its regulations to this particular case in the manner in which it normally determines how to apply regulations." Based on the evidence before it, the superior court properly made these findings and appropriately concluded that Vong failed to carry her burden of proving a due process violation. Substantial evidence supports the court's determination that the Board rationally believes "fish pedicures carry a risk of transmitting infectious disease." The record further supports the conclusion that prohibiting fish pedicures based on the inability to comply with sanitization regulations furthers the Board's "legitimate interest in public health and safety."

## II. Equal Protection

¶31 As with the due process claims, we consider Vong's state and federal equal protection challenges together. The guarantees in the two constitutions "are essentially the same in effect." *Trust v. County of Yuma*, 205 Ariz. 272, 277, ¶ 25, 69 P.3d 510, 515 (App. 2003); *see also Valley Nat'l Bank of Phx. v. Glover*, 62 Ariz. 538, 554, 159 P.2d 292, 299 (1945) ("The equal protection clauses of the 14th Amendment and the state constitution have for all practical purposes the same effect."). Although conceptually similar, "[t]he due process clause protects liberty and property interests while the equal protection clause protects against discriminatory classifications." *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 348, 842 P.2d 1355, 1361 (App. 1992).

¶32 "The equal protection clauses of the state and federal constitutions generally require that all persons subject to state legislation shall be treated alike under similar circumstances." *Wigglesworth v. Mauldin*, 195 Ariz. 432, 438, ¶ 19, 990 P.2d 26, 32 (App. 1999) (internal quotation marks omitted).

To establish an equal protection violation, a party must establish two facts. First, the party must show that it was treated differently than other people in [a] "similarly situated" class. Second, when . . . that disparate treatment does not trammel[] fundamental personal rights or implicate[] a suspect classification, the party needs to show that the classification bears no rational relation to a legitimate state interest.

*Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, 570-71, ¶ 54, 81 P.3d 1016, 1029-30 (App. 2003) (internal quotation marks and citation omitted). The equal protection clause does not provide "a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Comm'ns*, 508 U.S. at 313. "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321.

¶**33**        Vong argued in the superior court that "by singling out this specific practice for prohibition, while permitting and regulating other cosmetology practices that are demonstrably dangerous to the public, the Board has violated [her] equal protection rights." She similarly contends on appeal that cosmetology is "full of potentially dangerous risks to customers," but the Board "has adopted regulations that reduce but do not entirely eliminate the risk . . . except for fish spas, which alone were singled out for prohibition."

¶**34**        The relevant class for equal protection purposes is Board licensees engaged in nail technology. We held in *Vong I* that fish pedicures constitute neither "cosmetology" nor "aesthetics." 2011 WL 1867409, at *5-6, ¶¶ 20-21. Vong's discussion of how licensees in these other fields may be regulated is largely unpersuasive.[6] *See, e.g., Trust*, 205 Ariz. at 277, ¶ 25, 69 P.3d at 515 (Equal protection requires that all persons "be treated alike under similar circumstances."). But even if the relevant class consisted of *all* Board licensees,

---

[6] Vong's focus on the role of human hands in nail technology is similarly unpersuasive. Although hands need not be disinfected, Board regulations require licensees to wash their hands with soap and warm water before providing services to customers. A.A.C. R4-10-112(H)(1). Even this less restrictive requirement cannot be applied to fish.

reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.

*Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) (citations omitted).

¶35 "A law is general, and thus permissible, if it confers rights and privileges or imposes restrictions upon all members of a given class, when the classification has a reasonable basis." *Phx. Newspapers, Inc. v. Purcell*, 187 Ariz. 74, 80, 927 P.2d 340, 346 (App. 1996). The Board imposes Rule 4-10-112 on all licensees engaged in nail technology. As discussed *supra*, both facially and as applied to fish pedicures, the regulation has reasonable and legitimate purposes rooted in public health and safety. Even if a given classification "results in some inequality, it is not unconstitutional if it rests on some reasonable basis." *Church*, 173 Ariz. at 351, 842 P.2d at 1364.

¶36 Vong contends the Board should adopt rules specifically designed for fish pedicures or employ less restrictive means of regulating them. The Board, though, is not required to do so. "A perfect fit is not required; a statute that has a rational basis will not be overturned 'merely because it is not made with mathematical nicety, or because in practice it results in some inequality.'" *Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 566, 789 P.2d 1061, 1066 (1990) (internal quotation marks omitted); *see also Metropolis Theatre Co. v. City of Chi.*, 228 U.S. 61, 69-70 (1913) ("The problems of government are practical ones and may justify, if they do not require, rough accommodations, – illogical, it may be, and unscientific."). In other words, a legislative body "may hit at an abuse which it has found, even though it has failed to strike at another." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 151 (1938); *see also Ariz. Downs*, 130 Ariz. at 556, 637 P.2d at 1059 ("[T]he law need not be in every respect logically consistent with its aims to be constitutional.").

¶37 Based on the evidence presented at trial, the superior court properly concluded that Vong failed to prove she was treated differently from others similarly situated or that the Board's action lacked a rational relationship to legitimate state interests. *See Aegis of Ariz.*, 206 Ariz. at 570-71, ¶ 54, 81 P.3d at 1029-30.

## III.    Attorneys' Fees and Costs

**¶38**        We deny Vong's request for attorneys' fees and costs incurred on appeal because she is not the prevailing party.  Aune requests fees and costs pursuant to ARCAP 25 (sanctions for frivolous appeals or appeals taken solely for delay).  Although we disagree with Vong's substantive claims, her appeal is not frivolous, and we deny fees based on ARCAP 25.  Aune also cites ARCAP 21(c), but the version of Rule 21 in effect at the time of Aune's request required parties to "specifically state the statute, rule, decisional law, contract, or other provision authorizing an award of attorneys' fees."   ARCAP 21(c) (2013).  Aune has not done so, and we therefore deny her fee request.   Aune is, however, entitled to recover her appellate costs upon compliance with ARCAP 21.

## CONCLUSION

**¶39**        For the reasons stated, we affirm the judgment of the superior court.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh