NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ALLEN C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, H.C., A.C., *Appellees*.

No. 1 CA-JV 15-0110
FILED 10-6-2015

Appeal from the Superior Court in Maricopa County
No. JD 23431
The Honorable Linda H. Miles, Judge (Retired)

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

---

**D O W N I E**, Judge:

**¶1**         Allen C. ("Father") appeals an order terminating his parental rights to H.C. and A.C. (collectively, "the children"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**         The Department of Child Safety ("DCS") assumed custody of the children in March 2013 because their parents were incarcerated. After DCS filed a dependency petition, Father waived his right to contest the petition's allegations, and the superior court found the children dependent.

**¶3**         DCS filed a motion to terminate Father's parental rights, alleging abandonment under Arizona Revised Statutes ("A.R.S.") § 8-533(B)(1) and out-of-home placement for fifteen months or longer pursuant to A.R.S. § 8-533(B)(8)(c). Father contested the severance motion. He later failed to appear for mediation but appeared for an October 7, 2014 hearing. At the October 7 hearing, the court set a pretrial conference for November 4, 2014.

**¶4**         Father failed to appear for the November 4 pretrial conference. The court found no good cause for his absence, and Father was deemed to have admitted the factual allegations in the termination motion. The court proceeded with a severance hearing at which the case manager testified and other evidence was presented. At the conclusion of the hearing, the court ruled that DCS had proven both alleged grounds for termination and found that severance was in the children's best interests.

---

[1]      On appeal, "[w]e view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶5            Father filed a motion to set aside, asserting that he missed the November 4 hearing because he "was in the emergency room due to a serious injury on his hand."  The court set a hearing for January 9, 2015 to address Father's motion.  Father thereafter filed an amended motion to set aside, stating, *inter alia*: "Father now reports that he was admitted to the hospital on 11/5/14 the day after his hearing and not on 11/4/14 as previously reported." (Emphasis removed.)

¶6            At the January 9 hearing, the court denied the motion to set aside without prejudice and gave Father 30 days to file a new motion "supported by an Affidavit or other evidence warranting an Evidentiary Hearing."  Father subsequently filed a "Request for Evidentiary Hearing to Set Aside Ruling," reasserting his reasons for missing the November 4 hearing and submitting hospital records.

¶7            Father failed to appear for a status hearing in February, but he appeared and testified at an evidentiary hearing regarding his motion to set aside on March 31, 2015.  At the conclusion of that hearing, the court stated on the record that Father's testimony was not credible, denied the motion to set aside, and entered an order terminating Father's parental rights.  Father timely appealed.  We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶8            Father does not challenge the statutory grounds for termination or the superior court's best interest determination.  Nor does he deny receiving notice of the November 4 hearing.[2]  His sole argument on appeal is that the superior court abused its discretion in ruling that he lacked good cause for his failure to appear.

¶9            We review a finding regarding good cause for failure to appear for an abuse of discretion.  *See Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007).  Such a finding is largely discretionary, and we will reverse the superior court only if its exercise of discretion "was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."  *Id.*

¶10           If a parent fails to appear for a pretrial conference without good cause, the court may find that he has waived his legal rights and

---

[2]      Father testified at the evidentiary hearing that he knew his parental rights could be severed if he failed to appear.

deem him to have admitted the allegations in the termination petition. *See* Ariz. R.P. Juv. Ct. 64(C); *see also Adrian E.*, 215 Ariz. at 100, ¶ 15 ("Rule 64(C) implicitly authorizes the juvenile court . . . to terminate the parental rights of a parent who . . . fails to appear without good cause for a status conference on a pending motion for termination."). The court may set aside such a finding if the parent demonstrates good cause for failing to appear. *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007). To establish good cause, the moving party must show that: "(1) mistake, inadvertence, surprise[,] or excusable neglect exists and (2) a meritorious defense to the claim exists." *Id.*

**¶11** Father does not contend he has a meritorious defense to the underlying severance motion. *See id.* (meritorious defense must be established by facts). On that basis alone, we may affirm. Moreover, the record amply supports the determination that Father did not establish good cause for his failure to appear.[3]

**¶12** Father argues that on November 3, he showed his injured hand to the case manager, and "[b]y November 5, [his] injury was so severe that he went to the emergency room, was admitted to the hospital, and then underwent surgery. The clear logical inference from this is that between November 3 and November 5 his infection had worsened." However, evidence of record supports the superior court's finding that nothing prevented Father from either coming to court on November 4 or participating in the scheduled hearing via telephone.

**¶13** Among other things, the court noted that hospital records from November 5 described Father as "a well-developed, well-nourished man, lying comfortably in bed, no acute distress, pleasant and cooperative." Additionally, the court was entitled to take into account Father's conflicting assertions, including his initial claim he missed the November 4 hearing because he "was in the emergency room due to a serious injury on his hand." When asked whether he notified the court of his inability to appear, Father offered vague and contradictory testimony at the evidentiary hearing. He testified he attempted to call the court but recalled few pertinent details. Father also stated that his "mom started

---

[3] We do not address new arguments raised for the first time in Father's reply brief. *See State v. Watson,* 198 Ariz. 48, 51, ¶ 4 (App. 2000); *Anderson v. Country Life Ins.,* 180 Ariz. 625, 636 (App. 1994). *But cf., State v. Aleman,* 210 Ariz. 232, 236, ¶ 10 (App. 2005) (appellate court has discretion in whether to consider dispositive issues not raised in opening brief).

making calls for me because I couldn't" and that he "blacked out after I did the phone calls." Father first stated that he called the court on November 4 at "like 10[:00], 10:30" but later testified he passed out around seven or eight a.m. for twenty-four hours. The court did not receive messages from anyone regarding the hearing that day.

¶14 Additionally, although Father's motion stated he was in "severe pain and delirious," Father reported no such symptoms at the hospital. Father testified he was not truthful in reporting his symptoms, but that hospital staff knew of his "slight fever," "muscle weakness," "dizziness," and "blacking out" because "[t]hey could tell by my blood work and everything else." When asked about the medical report stating that he was "lying comfortably in bed with no acute distress, pleasant and cooperative," Father stated, "I'm not surprised."

¶15 The case manager testified that Father showed her his hand on November 3. She "did not see any cuts, contusions or anything like that, but I did see that it was off in color. It was about like a pinkish color and . . . was slightly inflamed or like puffy." The case manager told Father "if it gets bad, you should probably go and get it checked out." When Father failed to appear in court the next day, the case manager checked to see whether she had received any phone messages or emails from him; she had not. Father had her email address and telephone number. Father later contacted her by voicemail and email, stating he had been in the hospital on November 4. The case manager testified that Father's "story has changed" about missing the November 4 hearing, and she testified that "Father hasn't been truthful about a few different things."

¶16 Based on the evidence before the superior court, and given its unique ability to view Father as he testified, we find no abuse of discretion in concluding that his explanation for failing to appear was not credible. *See State v. Lehr,* 201 Ariz. 509, 517, ¶ 29 (2002) (credibility determinations and the weight to give witness testimony are questions exclusively for the trier of fact); *State v. Guerra,* 161 Ariz. 289, 293 (1989) (we will not reweigh evidence to decide if we would reach the same conclusion as trier of fact). Because Father failed to establish good cause for his failure to appear and has asserted no meritorious defense to the severance motion, the superior court properly denied his motion to set aside.

## CONCLUSION

¶17      We affirm the judgment of the superior court.



**Ruth A. Willingham** · Clerk of the Court
F I L E D : ama