NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FOUNDING FATHERS ACADEMIES, INC.,
a non-profit corporation, in the operation of
JEFFERSON ACADEMY OF ADVANCED
LEARNING, a charter school,
*Appellant*,

*v.*

ARIZONA STATE BOARD FOR CHARTER
SCHOOLS, *Appellee*.

No. 1 CA-CV 15-0664
FILED 10-13-2016

Appeal from the Superior Court in Maricopa County
No.  LC 2014-000375-001
The Honorable Crane McClennen, Judge (Retired)

**AFFIRMED**

COUNSEL

The Condos Law Office, PLC, Chandler
By Leonidas G. Condos
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Kim S. Anderson
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1        Founding Fathers Academies, Inc., appeals the superior court's judgment affirming a final decision by the Arizona State Board for Charter Schools ("Board") revoking the charter for a K-12 school. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Jefferson Academy ("the School") is a charter school operated pursuant to a charter between Founding Fathers — the charter holder — and the Board — the charter sponsor. The School, located in Show Low, Arizona, began operating in 2003 and serves approximately 150 students.

¶3        To ensure adequate academic performance in state schools, including charter schools, the Arizona Department of Education ("Department") is required to "compile an annual achievement profile for each public school and school district." Ariz. Rev. Stat. ("A.R.S.") § 15-241(A) (West 2013).[1] The achievement profile uses a letter grade system of "A" through "F," excluding "E." A.R.S. § 15-241(H).

¶4        In 2011, the Department gave the School an achievement profile grade of "D," reflecting below-average performance for the 2010-2011 school year. In 2012, the Department gave the School a "D" for the 2011-2012 school year. In September 2013, the Department notified the Board that the School had received an "F" for the 2012-2013 school year, reflecting a failing level of performance. Upon receipt of that information, the Board was required to "either take action to restore the charter school to acceptable performance or revoke the charter school's charter." A.R.S. § 15-241(U).

---

[1]        Unless otherwise indicated, we cite to the current versions of statutes when no changes material to our decision have occurred.

¶5          The Board communicated with Founding Fathers about the "F" grade and advised that the Board would determine whether to revoke the charter based on the Academic Performance Framework ("Framework") adopted pursuant to A.R.S. § 15-183(R).

¶6          The Board's initial evaluation reflected that the School was not meeting Framework standards. Founding Fathers was directed to submit a Demonstration of Sufficient Progress ("DSP"). A DSP permits a charter holder to demonstrate how it has improved and will continue improving academic performance. After Founding Fathers submitted its DSP, the Board visited the School and gave Founding Fathers an opportunity to submit additional documentation.

¶7          Founding Fathers scored "Not Acceptable" in all measures after the School visit and DSP evaluation. The Board met on December 9, 2013 and voted to revoke Founding Fathers' charter on three bases: (1) the School's "F" grade; (2) the School did not meet Framework standards; and (3) Founding Fathers scored "Not Acceptable" in all measures on its DSP.

¶8          After a four-day evidentiary hearing, an Administrative Law Judge ("ALJ") issued detailed findings of fact and conclusions of law, recommending that the Board revoke Founding Fathers' charter. With one minor factual correction, the Board adopted the ALJ's report and voted to revoke the charter.

¶9          Founding Fathers appealed to the superior court, which affirmed the Board's decision. Founding Fathers timely appealed to this Court. We have jurisdiction pursuant to A.R.S. § 12-120.21(A)(1), -913, and -2101(A)(1).

## DISCUSSION

¶10          "On appeal from the judgment of the superior court, we determine whether the underlying administrative decision . . . was illegal, arbitrary, capricious, or involved an abuse of discretion." *Shorey v. Ariz. Corp. Comm'n*, 238 Ariz. 253, 257, ¶ 11 (App. 2015); *see also* A.R.S. § 12-910(E) ("The court shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion."). We consider the administrative record in the light most favorable to upholding the Board's decision and will affirm that decision if it is supported by any reasonable interpretation of the record. *See Baca v. Ariz. Dep't of Econ. Sec.*, 191 Ariz. 43, 46 (App. 1998). We review

matters of statutory interpretation *de novo*. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 22, ¶ 5 (App. 2006).

## I.  The Board's Authority

**¶11**          Founding Fathers argues the Board's revocation decision usurped the statutory authority of the Superintendent of Public Instruction ("Superintendent").  It relies on language in A.R.S. § 15-182(E)(7) stating that the Board shall "[d]elegate to the superintendent of public instruction the execution of board policies."

**¶12**          Section 15-182(E)(7) cannot be read in isolation.  *See Cicoria v. Cole*, 222 Ariz. 428, 431, ¶ 14 (App. 2009) (Courts read statutes relating to the same subject matter in connection with each other, "as though they constitute[] one law.").  The Board was the sponsor of the charter held by Founding Fathers.  *See* A.R.S. § 15-183(C).  As such, the Board (whose members include the Superintendent, *see* A.R.S. § 15-182(A)(1)) is expressly authorized by statute to adopt the Framework and to revoke a charter if the charter holder fails to meet or progress in meeting Framework standards.  A.R.S. § 15-183(I)(3)(a).  The statute provides, in pertinent part:

> 3. *A sponsor* shall review a charter at five-year intervals using a performance framework adopted by the sponsor and *may revoke a charter at any time* if the charter school breaches one or more provisions of its charter or *if the sponsor determines that the charter holder has failed to do any of the following*:
>
> (a) Meet or make sufficient progress toward the academic performance expectations set forth in the performance framework.

A.R.S. § 15-183(I)(3)(a) (emphasis added); *see also* A.R.S. § 15-183(R) (vesting Board with "oversight and administrative responsibility for the charter schools that it sponsors" and requiring Board to "ground its actions in evidence of the charter holder's performance in accordance with the performance framework adopted by the sponsor").

**¶13**          This statutory scheme makes clear that the Board may adopt performance frameworks for charter schools, monitor compliance with those frameworks, and revoke a charter if the charter holder does not meet or make sufficient progress toward meeting performance expectations set forth in the Framework.  Moreover, even if there *were* a conflict between the duty to delegate Board "policies" to the

Superintendent (A.R.S. § 15-182(E)(7)) and the power to revoke charters (A.R.S. § 15-183(I)(3)(a)), the more specific statute — § 15-183(I)(3)(a) — would control here. *See Pima Cty. v. Heinfeld*, 134 Ariz. 133, 134 (1982) ("[W]here two statutes deal with the same subject, the more specific statute controls.").

¶14 Founding Fathers also contends the Board "had a duty to consult with the Department of Education after being informed of the 'F' grade regarding the potential for remediation before making a subjective recommendation to revoke Appellant's charter." Founding Fathers cites no legal authority in support of this assertion. And the record establishes that the Board and Department both acted in compliance with their statutorily defined duties.

¶15 When a charter school receives an "F" grade, the Department must "immediately notify the charter school's sponsor." A.R.S. § 15-241(U). That occurred here. At that point, the Board is required to "take action to restore the charter school to acceptable performance *or* revoke the charter school's charter." *Id*. (emphasis added). Before determining that revocation was appropriate, the Board considered Founding Fathers' DSP, visited the School, and gave Founding Fathers an opportunity to submit additional documentation. At its December 9, 2013 meeting, the Board identified and considered both of the identified statutory options: (1) revoking the charter; or (2) restoring the charter "to acceptable performance." In all relevant respects, the Board complied with its statutory obligations.

## II.    Revocation Decision

¶16 Founding Fathers contends that "but for the high poverty" of the School's students, "with some appropriate adjustment," it could have received a "B" or "C" grade and avoided revocation.[2] It also argues the Framework discriminates against special education ("SPED") students, students who receive free and reduced-priced lunches ("FRL"), English-language learners ("ELL"), and students who are "below age appropriate grade level."

---

[2]    The ALJ's report cites a Center for Student Achievement Report, which discusses the effect unmitigated poverty may have on learning and the challenge for the Arizona accountability model to "adequately control for the effect of poverty on the final school ranking."

¶17        The record demonstrates that, among other things, the Framework measures students' growth during an academic year and compares students who received the same or similar test results during the previous year to their performance in the current year.   The Framework thus takes into account how well charter schools perform in "catching students up" and compares students who are "below age appropriate grade level" to similarly situated students.

¶18        The Framework also measures how well students are performing "on state examinations in reading and math *given the characteristics of the school's population*," (emphasis added) i.e., the percentage of SPED, FRL, and ELL students in attendance.   Evidence presented at the hearing established that other Arizona charter schools with FRL populations exceeding 70% have met the Board's performance standards and that some of those schools have even achieved an "A" grade.   Additionally, the record amply supports the finding that:

> [T]he Board's academic performance framework accounts for the School's population of students coming from poverty and students with disabilities in its FRL and SPED subgroup proficiency comparisons.   The academic performance framework's subgroup proficiency measures compare the proficiency of the FRL and SPED subgroups within the School to the state average proficiency rate for those same subgroups in the same grade levels as those served by the School.   The School's Subgroup FRL proficiency rates are in the bottom 20% of statewide FRL subgroup performance in both math and reading.   The School's Subgroup SPED subgroup proficiency rates fall below statewide SPED subgroup performance in both math and reading.
>
> . . . .
>
> The Board's academic performance framework also accounts for the School's FRL and SPED population in its Composite School Comparison.   The proficiency rate of the School's students is less than the expected proficiency rate (composite school) by 15 or more percentage points in both math and reading.

(Footnotes omitted.)

¶19        Whether the Board has implemented the most effective tool possible for evaluating academic performance is not for this Court to

decide.  We do not function as a "super agency" and may not substitute our own judgment for that of the Board — especially when, as here, agency expertise and factual questions are involved.  *See DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336 (App. 1984); *see also U.S. Parking Sys. v. City of Phoenix*, 160 Ariz. 210, 211 (App. 1989) ("Judicial deference should be given to agencies charged with the responsibility of carrying out specific legislation.").  Witnesses at the evidentiary hearing testified about the Board's development of the Framework, including its consideration of "measures in addition to the State letter grade."   Nothing in the record suggests, let alone establishes, that the Board's chosen method of evaluating the School comes close to approaching the "arbitrary and capricious" standard.

¶20          Nor does the record support Founding Fathers' contention that the Framework makes test scores "the sole criteria for revocation," in contravention of A.R.S. § 15-181.  In making its revocation decision, the Board considered far more than test scores.  It concluded, for example, that Founding Fathers: (1) offered no evidence its curricula in various grade levels aligned with the Arizona College and Career Ready Standards; (2) failed to produce lesson plans for grades six through eight; (3) did not establish the School was performing reviews of lesson plans; (4) offered no evidence it was conducting teacher evaluations; and (5) failed to demonstrate it was collecting and analyzing assessment data to measure students' academic progress.   As such, the record squarely contradicts Founding Fathers' assertion that the Board arbitrarily relied on "a test score" as the "sole standard" in assessing its performance.

**CONCLUSION**[3]

¶21          For the foregoing reasons, we affirm the superior court's

---

[3]     Founding Fathers raises several new arguments for the first time in its reply brief, which we decline to consider.  *See State v. Watson*, 198 Ariz. 48, 51, ¶ 4 (App. 2000).  We grant the Board's Motion to Strike New Arguments Presented in Reply Brief.

judgment upholding the Board's revocation decision. By separate order, we address the stay of that decision that is currently in place.



AMY M. WOOD • Clerk of the Court
FILED: AA